WILLIAM HYLAND'S ESTATE *v.* F. E. FOOTE'S ESTATE.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed November 7, 1933.

2

*Wayne C. Bosworth* for the defendant.

*Wilbur E. Eno* and *George F. Jones* for the plaintiff.

POWERS, C. J.  The executor of the will of William Hyland, late of Watertown, N. Y., presented a claim against the estate of F. E. Foote, late of Cornwall, Vt., based upon a certain promissory note secured by a mortgage on real estate in Florida. The claim was disallowed by the commissioners, and the plaintiff appealed.  At the trial below, a verdict was ordered for the plaintiff, and judgment was rendered thereon.  The defendant excepted.

Foote was not a party to the note, but he bought the real estate above referred to, and the warranty deed which he accepted, contained this provision: "This conveyance is made subject to a mortgage in the sum of $4,300. now of record against said property."  From time to time, he made payments of interest on the note representing this mortgage debt, and later on he signed a writing on the back of it as follows: "January 30, 1929.  For value recd. this note extended to on or before three years from this date ."  This is the note here in question.

██ That Foote did not incur any personal liability to pay the note by force of the clause in the deed above referred to is clear.  *Guernsey* v. *Kendall,* 55 Vt. 201, 204; *Davis* v. *Hulett,*

58 Vt. 90, 94, 4 Atl. 139; *Phillips* v. *Vorenberg,* 259 Mass. 46, 156 N. E. 61, 63; *Hall* v. *Morgan,* 79 Mo. 47, 52; *Elliott* v. *Sackett,* 108 U. S. 132, 27 L. ed. 678, 681, 2 Sup. Ct. 375.

▉ Nor did the payments made by Foote or his agreement to extend the time of maturity give rise to such liability. *Mc-Farland* v. *Utz,* 175 Ill. App. 525, 530; *Fitzgerald* v. *Flannagan* (Iowa), 125 N. W. 995, 997; *Metropolitan Nat. Bank* v. *St. Louis Dispatch Co.,* 149 U. S. 436, 37 L. ed. 799, 803, 13 Sup. Ct. 944; *Willard* v. *Wood,* 135 U. S. 309, 34 L. ed. 210, 213, 10 Sup. Ct. 831.

Nor was there anything in Foote's letters to enlarge or change his liability on the note, even if it be assumed that they could be used for that purpose.

So if this estate can be held liable, it must be by force of the extension agreement signed by Foote as hereinbefore stated.

▉ Much has been said in the briefs and in argument to the effect that he placed his signature on this note, and that he thereby became liable as an indorser or at least a guarantor. But in order to create a liability of such a character, or of any character for that matter, the signature must have been made with intent to authenticate and give effect to the contract. Ordinarily, when one's signature appears upon a promissory note, the law implies such an intention and prescribes the liability assumed. But this is not so when the signature follows a memorandum, specific and complete, showing just what was intended, and that it was not signed to accomplish the purpose above specified. When one, not a party to the note, places his name thereon for a particular purpose sufficiently made manifest by the writing he signs thereon, his engagement is express and no contract beyond that can be·implied.

Thus, in *Central Trust Co.* v. *First Nat. Bank,* 101 U. S. 68, 70, 25 L. ed. 876, 877, the president of Cook County Bank signed a writing on the back of the note in question as follows: ''For value received, we hereby guarantee the payment of the within note at maturity or at any time thereafter, with interest at ten per cent. per annum until paid, and agree to pay all costs and expenses paid or incurred in collecting the same.'' It was held that this was not an indorsement and that it fully expressed the contract between bank and the plaintiff. ''Being express,'' says the court, ''it can raise no ·implication of any other contract. *Expressum facit cessare tacitum.*''

A similar question arose in *Pickering* v. *Cording,* 92 Ind. 306, 47 A. R. 145. There a promissory note was payable to the order of the maker. On the back of it was written a statement concerning the maker's real and personal property and the consideration of the note; this was signed by the maker. It was held that this was not sufficient to pass title to one to whom the note was transferred. The reasoning of the court was to the effect that the signature to the statement could not be disconnected from the writing above it, and since no effect could be given to that foreign to what it expressed, it did not amount to such an indorsement as would transfer the title.

In *Gray Tie & Lumber Co.* v. *Farmers' Bank,* 109 Ky. 694, 60 S. W. 537, 538, a written statement on the back of a draft read as follows: "Have this day delivered to C. W. Neil, for Gray Tie & Lumber. Co., the ties named in this draft, and said ties are free from all liens and incumbrances of any character; and I hereby agree to pay all landing and yard rent, bankage, or wharfage on the ties named in this draft until said ties are removed." This statement was signed by the payee of the draft. It was held that this was not such an indorsement of the draft as would pass title. The court said: "He (the payee) did not leave it to conjecture or implication what was intended. On the contrary, he merely asserts . . . . that he has delivered ties to the drawee's agent, and will not claim wharfage or bankage on them. The statement appears complete in itself, bears not the slightest resemblance to or suggestion of, the contract of endorsement. . . ."

In *Tucker* v. *Gentry,* 93 Mo. App. 655, 660, 67 S. W. 723, 724, a note was held by Todd as indorsee. A writing on the back of it read as follows: "Credit February 17th 1900 by seventy-four and 50/100 dollars ($74.50); balance due, nine hundred and 93/100 dollars, which are to bear only six per cent. interest from this date." This was signed by Todd. In a suit against his executor, it was held that this signature did not amount to an indorsement of the note. In so holding, the court said that "the signature of Todd is to be construed as a mere attestation of the credit given, and of the reduced rate of interest the note shall bear from that date."

*Ginter* v. *McBride,* 222 Mo. App. 1156, 14 S. W. (2d) 41, 42, is very much in point. The note in suit was one of a series secured by a trust deed. When another of these notes was trans-

ferred to a certain trust company, the holder of the note, the defendant, indorsed thereon a signed memorandum agreeing that in case of foreclosure, the note so transferred should have priority over the one in suit in the proceeds of the foreclosure sale. There was nothing in the evidence tending to show that the defendant intended to indorse the note. The question was whether the signed memorandum on the back of the note amounted to an indorsement thereof. In holding that it did not, the court said: ''The signature appended to the written memorandum, standing alone, would amount to a blank indorsement, but when considered in connection with the written memorandum, such memorandum qualifies and explains the purpose of the signature, which, in this case, was a mere certification or acknowledgment of the contract the trust company (defendant) and the insurance company (purchaser) relative to the priority of payment of the $16,000 note.''

█ On the authorities referred to, we hold that the writing on the back of this note being clear and complete, limits the force and effect of Foote's signature to its terms, and neither gives rise to nor allows any implied liabilities beyond them. Foote was not liable to pay the note, and, of course, it cannot be enforced against his estate. This being so, we need not consider the alleged trial errors referred to in the brief.

*Judgment reversed, and judgment for the defendant to recover its costs.*