2012 VT 69

## Kevin Turnley v. Town of Vernon

[58 A.3d 215]

No. 11-351

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 10, 2012

*Sharon L. Annis* of *McCarty & Buehler, P.C.*, Brattleboro, for Plaintiff-Appellant.

*John T. Leddy* and *Kevin J. Coyle* of *McNeil, Leddy & Sheahan, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Burgess, J.** Plaintiff Kevin Turnley appeals the Windham Civil Division's grant of summary judgment in favor of defendant Town of Vernon. Plaintiff, formerly the Town's Chief of Police, claims that he is entitled to receive overtime pay under the Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1), which entitles nonexempt employees to overtime pay for time worked in excess of forty hours in a week. The trial court held that plaintiff was exempt from the FLSA's overtime requirements because he was an "executive" employee. We affirm.

¶ 2. Plaintiff became the Town's Chief of Police in 2006. His employment was governed by a verbal agreement with the Selectboard and a written job description outlining the chief's duties. Plaintiff's salary was calculated from an hourly rate of $20.58.[1] The Town did not promise overtime pay when it hired plaintiff as chief.

¶ 3. According to the chief's job description, plaintiff's duties included:

> (1) "organiz[ing], direct[ing], and control[ling] all resources of the department to preserve the peace, protect persons and property and enforce the law"; (2) "designat[ing] an officer to serve as Commanding Officer in his/her absences"; (3) "plan[ning], direct[ing], coordinat[ing], control[ling] and staff[ing] all activities of the department"; (4) "develop[ing] and supervis[ing] a training program for all members of the department"; (5) "execut[ing] patrol and investigative responsibilities largely through the direction of subordinate officers and police officers" and "assum[ing] charge when important or difficult events or investigations are in progress"; (6) "plan[ning] and develop[ing] operating procedures . . . and enforc[ing] rules and regulations for the department"; and (7) "assign[ing] personnel to regular shifts."

As chief, plaintiff also had several reporting responsibilities, which required regular updates to the Selectboard, various state authorities, and federal agencies. Plaintiff characterized the chief position as a "working chief," with policing duties as well as administrative and supervisory functions.

---

[1] Although plaintiff's wages were calculated from an hourly rate, he received an established weekly salary based on full-time employment that was not docked for vacation or sick leave.

¶ 4. In October 2009, plaintiff sued the Town under the FLSA, seeking compensation for allegedly unpaid overtime hours.[2] Plaintiff asserted that the Selectboard interfered with his management of the police department and prevented him from hiring the additional personnel needed to meet operational demands. As a result, plaintiff claimed, the department was short-staffed, and he was at times forced to work more than ninety hours per week, and was owed for as many as 1335 overtime hours.

¶ 5. The Town moved for summary judgment, arguing that plaintiff was not covered by the FLSA's overtime requirement because the police chief was a noncovered "executive" employee as defined by the statute. Plaintiff responded that he was not an executive because his primary duty was not managerial and that he was actually a "first responder," an executive officer still primarily responsible for ordinary police work, entitled to overtime under the statute. The trial court granted the Town's motion, agreeing that plaintiff was an executive.

¶ 6. The court's findings can be summarized as follows. The court found undisputed that plaintiff's salary met the FLSA's requirement for an executive employee and, also meeting the statute's criterion, that he regularly supervised between three and five employees. The court further found, based on the Town's statement of undisputed facts and plaintiff's deposition, that plaintiff performed the managerial duties listed in the chief's job description. The court noted that plaintiff's responsibility for maintaining "law enforcement visibility" throughout the Town sometimes required that he undertake patrol assignments, but concluded that it was "unsurprising that the Chief of Police in a small, rural town would sometimes take on certain of the tasks of the line officer." Finally, it found that plaintiff hired personnel with the approval of the Selectboard, even if the Board did not always agree with his recommendations.

¶ 7. The lone issue on appeal is whether the court erred in concluding that plaintiff was an executive under the FLSA. We apply the same standard as the trial court when reviewing a motion for summary judgment. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 158, 624 A.2d 1122, 1127 (1992). Summary judgment is

---

[2] Plaintiff also sought overtime pay under 21 V.S.A. § 384, which, like the FLSA, requires employers to pay certain employees time-and-a-half for time worked in excess of forty hours a week. This claim was denied below, and plaintiff did not appeal that denial.

due when the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "A defendant who moves for summary judgment satisfies his legal burden when he presents 'at least one legally sufficient defense that would bar plaintiff's claim.'" *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266, 438 A.2d 373, 375 (1981) (quoting 10 C. Wright & A. Miller, Federal Practice and Procedure § 2734, at 647 (1973)). Moreover, in the face of a properly supported motion for summary judgment, the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." V.R.C.P. 56(e) (2011).[3]

¶ 8. Plaintiff argues the Town did not meet its burden of proving he was not covered by the FLSA's overtime requirement. He specifically disputes that his "primary duty" as chief was management, claiming instead that because he spent so much time doing patrol work, he was a covered first responder under the FLSA. Plaintiff also maintains that, contrary to Vermont's broad statutory powers of police chiefs to hire and fire, his decisions were treated as no more than suggestions accorded no particular weight by the Selectboard, so that he neither enjoyed nor exercised true executive authority in this area. We disagree with plaintiff's arguments and affirm the trial court's conclusion that, on the undisputed facts, plaintiff was an executive under the FLSA.

¶ 9. The FLSA provides that a nonexempt employee who works more than forty hours in a week must "receive[] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Exempt from the FLSA overtime mandate, however, are workers employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Federal regulations define an "executive" as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . .

---

[3] For the purpose of this decision, we refer to the version of Rule 56 in effect at the time plaintiff filed his suit. Rule 56 has since been amended — effective January 2012 — but, under the amended rule, the party opposing summary judgment must still point to specific facts in the record that support the assertion that there is a genuine issue of material fact. See V.R.C.P. 56(c)(1)(A) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion . . . with specific citations to particular parts of materials in the record").

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). An employer has the burden of showing that an employee is an executive. See *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). The "exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements" outlined in the regulations, and "[a] job title alone is insufficient." 29 C.F.R. § 541.2. Only the second and fourth prongs are at issue on appeal, and we address each in turn.[4]

¶ 10. "[A]n [executive] employee's 'primary duty' must be the performance of exempt work," that is, management. *Id.* § 541.700(a). Relevant to management in the law-enforcement setting, the regulations explain that:

Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; . . . appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used . . . ; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and

---

[4] It is undisputed that plaintiff earned a salary greater than $455 per week. Plaintiff stated in a deposition that he managed between three and five employees.

controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102. Determination of an employee's primary duty depends on "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* § 541.700(a). Factors pertinent here that bear on an employee's primary duty include: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision." *Id.* Concurrent performance of both executive and nonexecutive functions "does not disqualify an employee from the executive exemption if the requirements of [the executive exemption] are otherwise met." *Id.* § 541.106(a). If, moreover, an employee spends more than half of his or her time performing exempt work, it will "generally satisfy the primary duty requirement." *Id.* § 541.700(b).

¶ 11. In the law enforcement context, the definition of primary duty is qualified by the so-called "first responder" rule. *Id.* § 541.3(b)(1); see also *Mullins v. City of New York*, 653 F.3d 104, 110 (2d Cir. 2011) (explaining that "first responder" rule "addresses the second element of the executive exemption"). Under the first responder rule, the executive exemption does not apply to:

> police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators . . . and similar employees, regardless of rank or pay level, who perform work such as . . . preventing or detecting crimes; conducting investigations or inspections for violations of the law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)(1). Certain law enforcement personnel, therefore, such as police sergeants or lieutenants, whose primary duty is to investigate crimes, catch suspects, and perform other field police work, are still entitled to overtime pay under the FLSA even though in the course of performing those tasks they direct the work of other police officers. *Id.* § 541.3(b)(2); see also

*Mullins,* 653 F.3d at 115 (explaining that under first responder rule police officers directing operations in the field are not exempt from FLSA's overtime requirements). First responders are not exempt executives "because their *primary duty* is not management of the enterprise in which the employee is employed." 29 C.F.R. § 541.3(b)(2) (emphasis added).

¶ 12. Citing these principles, plaintiff claims that the Town did not meet its burden of proving that he was an executive. He argues that he was a first responder because he was forced to take on extra patrol work that would normally be left to a regular police officer. Plaintiff contends alternatively that there are disputed facts showing that, despite his nominal responsibilities, the Selectboard's interference with his running of the police department prevented him from serving as a manager in fact. Plaintiff complains, among other things, that he did not have sole discretion over such matters as whom to hire and fire, where to service the department's vehicles, what hours to patrol and where to set speed traps, and how to enforce the Town's dog ordinance.

¶ 13. The Town satisfied its burden of showing that plaintiff's primary duty was management. As the trial court noted, plaintiff raised only minor objections to the Town's statement of undisputed material facts, which established that he performed many of the managerial duties stated in his job description. Most significantly, plaintiff generally disputed the Town's characterization of his duties as managerial and argued that whether, and to what extent, he had the opportunity to carry out these duties was a contested material fact. Plaintiff's own deposition testimony, however, confirmed rather than disputed that he carried out these duties, and plaintiff provided no additional facts, as opposed to a differing viewpoint, creating a genuine dispute about his managerial status. See V.R.C.P. 56(e) (providing that summary judgment is appropriate where opposing party fails to present specific facts showing a genuine issue for trial); *Clayton v. Unsworth,* 2010 VT 84, ¶ 30, 188 Vt. 432, 8 A.3d 1066 (affirming summary judgment where plaintiffs failed to "identify any disputed material facts"); *Progressive Ins. Co. v. Wasoka,* 2005 VT 76, ¶ 25, 178 Vt. 337, 885 A.2d 1166 (reiterating "basic principle of summary judgment" that opponent of summary judgment may not rely on unsupported allegations). Drawing from his job description and deposition, plaintiff's duties fit squarely within the regulation's conception of "management" including: (1) directing and controlling department

resources and activities, including patrol and investigation; (2) developing and supervising the training of department personnel; (3) developing department operating procedures and regulations; (4) making and reviewing personnel assignments; (5) preparing the department's budget; and (6) providing updates to local, state, and federal authorities. As reflected by his duties, plaintiff was a "manager" under the FLSA.

¶ 14. The first responder rule does not alter this conclusion. The first responder rule clarifies that a law enforcement officer, primarily charged with field operations, is not a manager simply because he or she directs the field operations of other police officers. It does not turn a chief of police, whose primary duty was management, into a nonmanager simply because he functioned as a "working chief," who, in some weeks, was forced to perform patrol work for long hours. See *Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 529 (D. Mass. 2008) (stating that "an employee does not have to spend all of his or her time — or even 50 percent of his or her time — on their primary duty to be considered a manager"). In his complaint, plaintiff claims that between February 2006 and December 2008, he worked 825 "hours of overtime," and from January 1 to September 28, 2009, he worked 510 "hours of uncompensated overtime." Plaintiff fails to specify the type of work he performed during his "overtime hours." But, even assuming that his figures are correct, and that all of this time was spent on nonmanagerial duties, such as patrol, plaintiff does not point to specific facts showing that, considering his regular work hours along with his "overtime hours," his primary duty was not management.

¶ 15. Moreover, even if, to use plaintiff's characterization, the Selectboard did "micromanage" the department and meddle in areas more wisely left to the chief's discretion, it does not follow that he was under "direct supervision" as meant by the regulations. Rather, the regulations have in mind an employee's freedom from supervision by *another employee*, not, as here, the relationship between a town employee and the town's governing body. See *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 159 (D. Mass. 2007) (explaining that police sergeants "work[ed] relatively free from supervision and exercise[d] their judgment and discretion without direct oversight by their *commanding lieutenants*" (emphasis added)). As chief, plaintiff had no superiors within the

department and therefore no one inside the department exercised direct supervision over his performance. Put differently, under plaintiff's view, neither he, *nor any department employee*, but rather the Selectboard, was in charge of the Vernon Police Department during his tenure as chief. The FLSA, on the other hand, assumes that some department employee must have been a manager, and the evidence supports that plaintiff was the person in charge.

¶ 16. We turn, finally, to the fourth prong of the executive exemption, under which the putative manager must have "the authority to hire or fire other employees" or the ability to make "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" that are "given particular weight." 29 C.F.R. § 541.100(a)(4). Factors to consider include "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." *Id.* § 541.105. The regulations further clarify that "particular weight" is not to be confused with absolute power, explaining that "[a]n employee's suggestions and recommendations may . . . have 'particular weight' . . . even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.*

¶ 17. Plaintiff posits that the regulation on this point is further defined by applicable state law. He argues that 24 V.S.A. § 1931(b), which provides that "[t]he direction and control of the entire police force . . . shall be vested in the chief of police," augments the FLSA's requirement, such that the FLSA as applied to Vermont police chiefs mandates that chiefs have sole discretion over hiring and firing. Applying this construct, plaintiff argues that because he made only suggestions to the Selectboard in this area, which were only sometimes approved, he did not have the requisite authority as of an executive under the FLSA.

¶ 18. Assuming that state law is relevant to the FLSA inquiry on this point, plaintiff nevertheless misreads § 1931(b) as giving Vermont police chiefs the power to hire and fire personnel free from the supervision of town government. Under 24 V.S.A. § 1931(a), a town's "legislative body" — in Vernon, the Selectboard

— or the town manager, "may establish a police department and appoint police officers and a chief of police who shall be a police officer." Section 1931(a) further provides that "[s]uch legislative body or town manager may temporarily appoint qualified persons as additional police officers when necessary, or appoint qualified persons as temporary police officers in the event no police department is established, shall specify the term and duties of such officers and may fix their compensation, which may be paid by the municipality." *Id.* Under § 1931(a), therefore, town government is empowered to establish and generally oversee a police department. See *Martin v. Town of Springfield*, 141 Vt. 554, 560, 450 A.2d 1135, 1139 (1982) (explaining that chapter 55 of Title 24 contains "general laws relative to the government of towns" that are merely the "source of [a town's] authority to hire police officers" (quotation omitted)). Read together, § 1931(a) and (b) envision a police department created by town government, the operations of which are directed by a chief, but which is concurrently and ultimately subject to the authority of town government. By itself, § 1931(b) — which, incidentally, undercuts plaintiff's primary-duty argument — means simply that the chief of police is in charge of the other people who work at the police department. It adds nothing to the fourth FLSA requirement.

¶ 19. As defined by the regulations, plaintiff had the requisite hiring and firing power of an executive. Plaintiff testified at his deposition that he hired personnel with "permission" of the Selectboard, and that he made recommendations to the Board regarding hiring decisions, "some" of which were followed. Plaintiff also did not dispute the Town's statement of undisputed facts, which stated that "[h]e hired personnel with the approval of the Town Selectboard" and that "[h]e made recommendations about eliminating positions within his department that were adopted by the Selectboard." As the trial court concluded, this record supports that, while the Selectboard had final say on hiring and firing decisions, plaintiff's recommendations influenced the Board's decisions and, therefore, under the FLSA, plaintiff's suggestions carried "particular weight."

*Affirmed.*